**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

ROBERT A.,[1]                                          Case No. 3:25-cv-6
     Plaintiff,                                    Litkovitz, M.J.

vs.

COMMISSIONER OF                        **ORDER**
SOCIAL SECURITY,
     Defendant.

Plaintiff Robert A. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security (Commissioner)

denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security

income (SSI).  This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the

Commissioner's response (Doc. 9), and plaintiff's reply (Doc. 10).

I.      **Procedural Background**

Plaintiff protectively filed his applications for DIB and SSI on November 12, 2020,

alleging disability since October 1, 2020, due to a back injury, "legs," schizophrenia, and HIV.

(Tr. 228-37; *see also* Tr. 286, 735).  The applications were denied initially and upon

reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* hearing before

administrative law judge (ALJ) Gregory Beatty.  Plaintiff and a vocational expert (VE) appeared

by telephone and testified at the ALJ hearing on May 24, 2022.  (Tr. 41-69).  On June 7, 2022,

the ALJ issued a decision denying plaintiff's applications.  (Tr. 16-40).  On June 23, 2023, the

Appeals Council denied plaintiff's request for review, making the ALJ's decision the final

decision of the Commissioner.  (Tr. 3-8.)

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

Plaintiff appealed the denial of his application to this Court. *See Robert A. v. Comm'r of Soc. Sec.*, Case No. 3:23-cv-237 (S.D. Ohio). Upon a joint motion to remand, the matter was remanded to the Commissioner for further proceedings. (Tr. 815-19).

A second hearing was held on August 19, 2024, before ALJ Nicholas J. Schwalbach. (Tr. 753-81). On September 20, 2024, the ALJ issued a decision denying plaintiff's applications. (Tr. 724-52). Plaintiff did not request review by the Appeals Council opting to directly file suit with this Court. This matter is properly before this Court for review.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2024.

2. [Plaintiff] likely engaged in substantial gainful activity since the alleged onset date, but given the lack of clarity, the [ALJ] stays making a finding at step one (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

3. [Plaintiff] has the following severe impairments: degenerative disc disease, borderline intellectual functioning, schizophrenia, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

3

5. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) that is [plaintiff] can lift and carry up to 50 pounds occasionally and up to 25 pounds frequently. He can stand/walk 6 hours per 8-hour workday and sit for up to 6-hours per 8-hour workday. [Plaintiff] can push and pull with the bilateral upper extremities on a frequent basis. He can frequently, stoop, kneel, crouch, crawl, and climb ramps or stairs. [Plaintiff] cannot climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to atmospheric conditions (as defined by SCO), avoid all exposure to unprotected heights, moving machinery, and commercial driving. [Plaintiff] can understand, remember, and carry out simple instructions and perform routine tasks; use judgment to make simple work-related decisions; can perform goal-oriented work (e.g., office cleaner) but is unable to perform at a production-rate pace (e.g., assembly line work) or other jobs with strict production demands; he can have occasional superficial contact with coworkers and supervisors but no teamwork, tandem tasks, conflict resolution or over-the-shoulder supervision; "superficial contact" is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people, supervising other people, or rendering advice; he can have no contact with the public as part of job duties; he can tolerate occasional changes in an otherwise routine and predictable work setting explained in advance to allow time for adjustment to new expectations[.]

6. [Plaintiff] is capable of performing past relevant work as a cleaner/housekeeper. This work does not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

[Plaintiff] was born [in]. . . 1981 and was 39 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

[Plaintiff] has a limited school education (20 CFR 404.1564 and 416.964).

Transferability of job skills is not an issue in this case because [plaintiff]'s past relevant work is unskilled (20 CFR 404.1568 and 416.968).

Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as kitchen helper (129,000 jobs nationally), cleaner II (54,000

\*\*\*

> 7. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 730-46) (footnote added).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

jobs nationally), and laborer (165,000 jobs nationally). (Tr. 744-46, 777).

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545–46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

Plaintiff argues that the ALJ's decision is not supported by substantial evidence because: 1) the ALJ erred in his findings regarding the record's opinion evidence; 2) vocational evidence indicated that the residual functional capacity assigned would preclude sustained, competitive employment; 3) the ALJ made unsupported findings regarding plaintiff's work activity and fails to resolve conflicts in the evidence as to the extent of that work activity; and 4) the ALJ violated SSR 16-3p by embracing plaintiff's limited treatment as evidence of non-disability without first addressing reasons for that limited treatment. (Docs. 8 and 10).

The Commissioner responds that: (1) the ALJ's findings are supported by substantial evidence regarding the opinions of state agency psychological consultant, Cindy Matyi, Ph.D., psychologist James Tanley, Ph.D., and physician Martin Schear, M.D.; (2) the RFC finding is consistent with the VE's testimony; (3) the ALJ reasonably assessed plaintiff's subjective complaints; and (4) the ALJ reasonably considered plaintiff's limited treatment as one factor in evaluating symptom severity because plaintiff offered no evidence that his limited mental health treatment was due to his mental health impairment. (Doc. 9).

### E. Analysis

### 1. The ALJ's evaluation of the opinion evidence in the record is supported by substantial evidence.

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence. Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[3] 20 C.F.R. §§ 404.1520c and 416.920c.[4] Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the

---

[3] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[4] The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

7

more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [they] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how they considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

### a. State Agency Psychologist Cindy Matyi, Ph.D. [6]

On January 14, 2022, state agency psychological consultant Cindy Matyi, Ph.D., reviewed plaintiff's record on reconsideration. (Tr. 111-12). Dr. Matyi determined that plaintiff "is able to comprehend and remember simple instructions" but "[w]ould need a relatively isolated workstation and supervisory support when first learning job tasks." (Tr. 111). In addition, she concluded that plaintiff "can relate adequately on a superficial basis in an environment that entails infrequent public contact, minimal interaction with coworkers, and no over-the-shoulder supervisor scrutiny." (Tr. 112). Dr. Matyi further determined that plaintiff "can adapt to a setting in which duties are routine and predictable and in which changes are

---

[6] Plaintiff does not take issue with the assessment performed by David Dietz, Ph.D., at the initial review level. *See* Doc. 8 at PAGEID 1118.

infrequent, explained in advance, and introduced slowly" and that he "[w]ould require supervisory support with goal-setting and planning." (*Id.*).

In evaluating Dr. Matyi's prior administrative medical findings, the ALJ agreed that plaintiff was limited to simple instructions, and he concluded that Dr. Matyi's finding, that plaintiff required a "relatively isolated workstation," could be accomplished by limiting him to "no more than occasional superficial contact with coworkers and supervisors where there is no teamwork, tandem tasks, or over the shoulder supervision." (Tr. 743). The ALJ also determined that plaintiff could not perform work requiring him to engage in conflict resolution, supervision, or public contact. (*Id.*). However, the ALJ found Dr. Matyi's opinion "no more than partially persuasive" because her conclusion that plaintiff would require additional supervisory support when learning a job, goal setting, and planning is unsupported by objective evidence and inconsistent with plaintiff's current and past work history. (*Id.*). The ALJ specifically noted that plaintiff would not require a "completely isolated work station" because, at the time of the ALJ's opinion, he was "working full-time in a position with some social contact, has had generally normal objective mental status examination findings, and responded to treatment when he attends it." (*Id.*).

Plaintiff contends that the ALJ's evaluation of Dr. Matyi's opinion is not supported by substantial evidence because: (1) the ALJ social limitation did not "genuinely incorporate" Dr. Matyi's isolated workstation finding; and (2) the ALJ ignored evidence of "significant clinical abnormalities" in assessing Dr. Matyi's finding regarding plaintiff's need for additional supervisory support. (Doc. 8 at PAGEID 1119-20). The Court disagrees.

### i.  Relatively Isolated Workstation

"[T]he ALJ is imbued with discretion when formulating the RFC" and need not use any particular language when describing plaintiff's abilities. *Stephen D. v. Comm'r of Soc. Sec.*, 734 F. Supp. 3d 729, 741 (S.D. Ohio 2024).  Although physicians and others render opinions on a plaintiff's abilities and limitations, the ultimate responsibility for determining an RFC lies with the Commissioner. *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010) (citing 42 U.S.C. § 423(d)(5)(B); *Nejat v. Comm'r of Soc. Sec.,* 359 F. App'x 574, 578 (6th Cir. 2009)); *Anissa H. v. Comm'r of Soc. Sec.*, No. 2:21-cv-5315, 2023 WL 1857822, at *8 (S.D. Ohio Feb. 9, 2023), *report and recommendation adopted*, 2023 WL 2692415 (S.D. Ohio Mar. 29, 2023).  "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).

In this case, Dr. Matyi concluded that plaintiff "[w]ould need a relatively isolated workstation." (Tr. 111).  The ALJ essentially implemented Dr. Matyi's conclusion "[w]hile adopting different language." (Tr. 743).  Specifically, the ALJ determined that "the relatively isolated workstation is accomplished with no more than occasional superficial contact with coworkers and supervisors where there is no teamwork, tandem tasks, or over the shoulder supervision" and "further refined and defined" by the ALJ's stated RFC definition of "superficial contact" as "retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interaction such as persuading other people, supervising other people, or rendering advice." (Tr. 743, 734).  While plaintiff contends that the ALJ's RFC fails to "genuinely incorporate any isolated workstation limitation" (Doc. 8 at PAGEID 1119), another court addressing the issue has

10

concluded that an RFC limiting a claimant to "occasional interaction with coworkers and the public on a superficial basis . . . sufficiently accounted for the 'relatively isolated workstation' limitation opined by Dr. Matyi." *Chitwood v. Comm'r of Soc. Sec.*, No. 4:23-cv-1579, 2024 WL 1141499, at *13 (N.D. Ohio Mar. 15, 2024).

Plaintiff urges the Court not to follow the reasoning espoused in *Chitwood* for several reasons. (Doc. 10 at PAGEID 1150-53). Plaintiff first contends, citing SSR 83-10, that an RFC for "occasional" social interaction indicates that a claimant can engage socially for up to one-third of his time at work which "categorically cannot reasonably or logically be said to be performed alone." (Doc. 10 at PAGEID 1151).[7] However, plaintiff fails to note that Dr. Matyi recommended a "relatively isolated workstation." (Tr. 111). She did not request that plaintiff work in complete isolation. In addition, the social component of the ALJ's RFC limits not only the frequency of interactions but the quality and the nature of those interactions as well. The RFC provides that plaintiff "can have occasional *superficial* contact with coworkers and supervisors but no teamwork, tandem tasks, conflict resolution or over-the-should supervision; 'superficial contact' is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people, supervising other people, or rendering advice; he can have no contact with the public as part of job duties." (Tr. 734) (emphasis added). The Court finds, as did the *Chitwood* court, that limitations to both occasional and superficial contact with others as well as additional social limitations sufficiently account for the "relatively isolated workstation" limitation opined by Dr. Matyi.

---

[7] SSR 83-10 provides, in relevant part, "'Occasionally' means occurring from very little up to one-third of the time." SSR 83-10 (S.S.A.), 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL 31251.

Plaintiff next contends that the ALJ's RFC "reveals no restrictions whatsoever which would preclude Plaintiff from working shoulder to shoulder with two coworkers or working in a small room surrounded by ten coworkers." (Doc. 10 at PAGEID 1151).  Besides being raised for the first time in plaintiff's reply brief,[8] plaintiff's argument is factually incorrect.  The ALJ's RFC specifically limits plaintiff to "occasional superficial contact with coworkers and supervisors but no teamwork, tandem tasks, conflict resolution or over-the-shoulder supervision" and "no contact with the public." (Tr. 734).

Plaintiff's final arguments, also raised in his reply brief, urge the Court not to follow the precedent set in *Chitwood* because "different dimensions of social functioning [specifically "brief" and "occasional"] are not interchangeable." (Doc. 10 at PAGEID 1152).  Plaintiff also quotes from the Appeals Council's prior remand order that predates the ALJ's decision at issue. *Id.*  The Court is unable to discern how these arguments are relevant to or are inconsistent with the approach in *Chitwood,* and in any event they are waived.  *See Julie P.*, 2022 WL 3083523, at *1.

### ii. Supervisory Support

Plaintiff next contends that the ALJ did not properly evaluate Dr. Matyi's opinion that plaintiff "would require additional supervisory support when learning [a] job, goal setting, and planning." (Doc. 8 at PAGEID 1120) (quoting Tr. 743).  The ALJ determined that "this opinion is no more than partially persuasive" because it lacked objective support and was inconsistent with plaintiff's work history. (Tr. 743).  Plaintiff argues that the ALJ ignored evidence,

---

[8] *See Julie P. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4170, 2022 WL 3083523, at *1 (S.D. Ohio Aug. 3, 2022), *aff'd sub nom.*, *Pettit v. Comm'r of Soc. Sec.*, No. 22-3826, 2023 WL 3200582 (6th Cir. May 2, 2023) ("To the extent Plaintiff's objection was not raised in her Statement of Errors, Plaintiff waives the argument.").

including the clinical abnormalities psychological examiner James Tanley, Ph.D., identified.

(Doc. 8 at PAGEID 1120).

As courts have explained:

Generally, an ALJ has a duty not to cherry-pick facts from the record to support a finding of not disabled where a finding of disabled would otherwise be appropriate. *Smith v. Comm'r of Soc. Sec.*, No. 1:11-cv-2013, 2013 WL 943874, at *6 (N.D. Ohio, March. 11, 2013) (citations omitted).  However, an ALJ does not cherry-pick the record simply by resolving discrepancies in the record against the claimant. *Id.* Moreover, the undersigned does not conduct a de novo review of the record, and an ALJ's findings are not subject to reversal for the sole reason that substantial evidence could support the opposite finding[.] *Buxton v. Halter*, 246 F.3d 762, 772-73 (6th Cir. 2001).  What some describe as "cherry-picking" may more neutrally be termed weighing the evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009).

*Coppage v. Berryhill*, No. 1:16-cv-00144, 2017 WL 8640926, at *4 (W.D. Ky. Aug. 11, 2017), *report and recommendation adopted,* 2018 WL 305336 (W.D. Ky. Jan. 5, 2018); *see also DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (noting that "cherry-picking" arguments are seldom successful because they require the impermissible reweighing of evidence).

The ALJ is required to "explain how [he] considered the supportability and consistency factors" in his written decision.  20 C.F.R. § 404.1520c(b)(2).  The ALJ here has done so.  He "adopted occasional changes in the routine setting that are given in advance," but he declined to require "slow introduction" because plaintiff's "work history since the alleged onset date" is inconsistent with such a requirement.  (Tr. 743).  As to supportability, the ALJ specifically noted that Dr. Matyi, the psychological consultant at the reconsideration level, "agreed with the specific areas for which [plaintiff] was moderately limited; however, she prescribed a different residual functional capacity than that at the initial review level."  (*Id.*).  He found Dr. Matyi's

13

opinion lacking objective support due to plaintiff's "generally normal objective mental status examination findings." (*Id.*).

Plaintiff contends that the ALJ's finding "ignores" Dr. Tanley's documented findings that plaintiff provided unusual interpretations for two of three proverbs; made errors when counting backward, reciting the alphabet, and counting by threes; was able to remember only two of three objects after a five-minute delay with cueing; and demonstrates "intellectual deficits." (Doc. 8 at PAGEID 1120). However, the ALJ specifically discussed plaintiff's "borderline intelligence" and included a simple instructions RFC limitation as an accommodation. (Doc. 743). In addition—citing Dr. Tanley's disability assessment report contained at exhibit no. B5F—the ALJ accurately noted that plaintiff has never been psychiatrically hospitalized (Tr. 364) [9]; is able to do his own cleaning and shopping, although his mother drives him to the grocery (Tr. 364); was generally cooperative with the examiner (Tr. 365); demonstrated unremarkable grooming, posture, and general motor activity (Tr. 365); spoke with normal velocity and volume (Tr. 365); demonstrated appropriate affect with coherent, relevant, and goal-oriented thoughts (Tr. 365); demonstrated unremarkable energy level with no anhedonia, mood swings, or grandiosity (Tr. 365); had no motor or autonomic manifestations during his examination and displayed no evidence of apprehension, scanning, or sense of impending doom (Tr. 365); was alert and fully oriented with superficial recent and remote memory (Tr. 365); and sensorium and cognitive functioning demonstrated intellectual functioning in the borderline range (Tr. 365). (Tr. 737).

---

[9] The ALJ cited Dr. Tanley's report as "Ex. B5F" but did not include pinpoint citations for his findings. Dr. Tanley's report is a seven-page document (including the fax cover page and the electronic signature page), and the Court had no difficulty locating the exact portions of the report to which the ALJ referred. (Tr. 362-68). Where this Order includes citations to specific pages within Dr. Tanley's report, the Court supplied those citations.

Although the ALJ did not specifically name all of the individual components of the cognitive functioning evaluations (i.e., the proverb explanations, the single error that plaintiff made in each of the exercises "counting backwards, reciting the alphabet, and performing Serial 3 Addition" (Tr. 365)), the ALJ included in his opinion Dr. Tanley's summary that "performance in cognitive testing in addition to his educational background, work history, breadth and depth of knowledge suggested intellectual functioning within the borderline range." (Tr. 737). Far from the cherry-picking plaintiff alleges, the ALJ expressly considered Dr. Tanley's examination in finding Dr. Matyi's opinion lacking objective support due to plaintiff's "generally normal objective mental status examination findings." (Tr. 743). Accordingly, the Court finds that the ALJ's evaluation of Dr. Matyi's opinion is supported by substantial evidence.

### b.  Consultative Examiner James Tanley, Ph.D.

Plaintiff next contends that the ALJ failed to meaningfully explain how he evaluated supportability in evaluating Dr. Tanley's opinion. (Doc. 9 at PAGEID 1121). Following his lengthy recounting of Dr. Tanley's findings discussed above, the ALJ found his opinion only "somewhat persuasive," citing plaintiff's work history, minimal and conservative treatment, ability to shop, navigate public transportation, and maintain familial relationships. (Tr. 740). According to the ALJ, "the clinical findings within the record, including within the report authored by [Dr. Tanley] fail to support finding [plaintiff] would be unable to engage in work activity that is limited by the adopted residual functional capacity." (*Id.*).

Although plaintiff argues that the ALJ failed to "show his work" (Doc. 8 at PAGEID 1122), the Court disagrees. "The Court cannot uphold an ALJ's decision, even if there is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Canty v. Comm'r*

*of Soc. Sec.*, No. 2:15-cv-2221, 2016 WL 5957679, at *3 (S.D. Ohio Oct. 14, 2016) (citing

*Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78

F.3d 305, 307 (7th Cir. 1996)); *see also Stephen D.*, 734 F. Supp. 3d at 741-42 (quoting *Stacey v.*

*Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (Court must be able to "trace the

path of [the ALJ's] reasoning."); *White v. Comm'r of Soc. Sec.*, No. 1:20-cv-588, 2021 WL

858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their

requirements for the treatment of medical opinions, they still require that the ALJ provide a

coherent explanation of his reasoning.").

In this case, the ALJ identified the findings that failed to support Dr. Tanley's functional

assessment of plaintiff. Specifically, the ALJ noted that Dr. Tanley assessed plaintiff as having

intellectual functioning in the borderline range and having no difficulties during the examination

with understanding, remembering, or carrying out instructions. (Tr. 739, referring to Tr. 367).

However, the ALJ found that assessment only "partially consistent" with Dr. Tanley's note that

plaintiff "struggled to recall even two items" in a three-item series after a delay and with cueing

and able only to recall 5 digits forward and three in reverse. (Tr. 739, referring to Tr. 365).

The ALJ further noted that plaintiff's abilities in maintaining attention, concentration,

persistence, and pace to perform simple and multistep tasks, according to Dr. Tanley, "varied a

bit" during the consultative examination and, "if [plaintiff's] schizophrenia symptoms were to

worsen, they could negatively impact this functional domain by interfering with the ability to

focus and to concentrate." (Tr. 739, referring verbatim to Tr. 367). The ALJ found this opinion

"wanting for specifics" but "at least more consistent with the noted clinical findings within the

report." (Tr. 739).

16

The ALJ noted that Dr. Tanley described plaintiff's social presentation as "unremarkable" but that Dr. Tanley assessed plaintiff's ability to respond appropriately to supervision and coworkers as "likely to be at severe risk of trying to deal with the social aspects of work." (Tr. 740, referring verbatim to Tr. 367). The ALJ found this aspect of Dr. Tanley's opinion to rely "nearly exclusively" on subjective self-reports while ignoring plaintiff's self-reported work history. (Tr. 740).

Finally, the ALJ noted that Dr. Tanley opined that plaintiff's schizophrenic symptoms could "significantly lower his frustration tolerance and put him a[t] serious risk for the pressures of work." (Tr. 740, referring verbatim to Tr. 367). However, the ALJ found that conclusion unsupported by Dr. Tanley's own clinical observations and inconsistent with other records in plaintiff's file. (Tr. 740). Interestingly, the sentence immediately prior to the sentence the ALJ quoted provides that plaintiff has no "reported history of mental or emotional deterioration in response to work exposure." (Tr. 367). Even though the ALJ failed to provide citations to the specific pages on which he relied in finding Dr. Tanley's opinion only "somewhat persuasive," the ALJ provided sufficient factual findings to adequately explain his required consideration of the supportability factor. *See Amy G. v. Comm'r of Soc. Sec.*, No. 2:24-cv-1151, 2025 WL 455378, at *10 (S.D. Ohio Feb. 11, 2025), *report and recommendation adopted*, 2025 WL 807771 (S.D. Ohio Mar. 14, 2025) (Even without precise citations to the record, the Sixth Circuit has held that meaningful judicial review can be conducted where the ALJ made sufficient factual findings in the decision that support his conclusion). Because the ALJ sufficiently articulated the findings within Dr. Tanley's report that fail to support his assessed limitations, the ALJ's evaluation of Dr. Tanley's opinion is supported by substantial evidence.

17

### c.  Primary Care Physician Martin Schear, M.D.

Plaintiff next contends that the ALJ erred "in failing to substantively address Dr. Schear's opinions as they appear to relate to mental health restrictions." (Doc. 8 at PAGEID 1122).  Dr. Schear, plaintiff's primary care physician, completed a medical assessment form provided by plaintiff's counsel.  (Tr. 1048).  In his pre-printed medical assessment form, Dr. Schear indicated that he had treated plaintiff for "low back pain, leg pain, asthma."  (Tr. 1049).  Dr. Schear indicated that plaintiff could be prompt and demonstrate reliability, but his ability to withstand the pressure of meeting normal work productivity and accuracy standards would be impaired by "back + leg pain" and his ability to complete a normal workday and work week and perform at consistent pace would be impaired by "back + leg pain, history of substance abuse."  (Tr. 1049-50).

The ALJ found Dr. Schear's medical limitations "not persuasive," "wholly unsupported by his own treatment notes documenting minimal treatment and physical examinations showing normal findings," and "inconsistent with [plaintiff's] activities including work, living alone, and ability to manage himself generally independent of others."  (Tr. 741).  The ALJ did not evaluate Dr. Shear's mental health restrictions because Dr. Shear did not opine as to any mental health restrictions.  (Tr. 1048-54).  Plaintiff has not identified any mental health impairments on which Dr. Schear opined nor any evidence that Dr. Schear was aware plaintiff suffered from mental health concerns other than "history of substance abuse."  (Doc. 8 at PAGEID 1122-23).  Plaintiff raised no challenge to Dr. Schear's opined physical limitations.  (*Id.*).  Accordingly, the ALJ's evaluation of the opinion evidence is supported by substantial evidence, and plaintiff's first alleged error will be overruled.

18

**2. The ALJ's evaluation of the vocational evidence is supported by substantial evidence.**

Plaintiff contends that the vocational evidence in the record requires a finding that the RFC assigned would preclude sustained, competitive employment. (Doc. 8 at PAGEID 1116, 1123-24). At step five of the sequential evaluation process, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's [RFC] (determined at step four) and vocational profile." *Chasidy M. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4679, 2022 WL 2712216, at *9 (S.D. Ohio July 13, 2022) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)). The Commissioner may rely on a VE's testimony in response to a hypothetical question, but "[t]o constitute substantial evidence in support of the Commissioner's burden, the hypothetical question posed to the VE must accurately reflect the claimant's physical and mental limitations." *James W. v. Comm'r of Soc. Sec.*, No. 1:23-cv-819, 2025 WL 606426, at *13 (S.D. Ohio Feb. 25, 2025) (quoting *Chasidy M. v. Comm'r of Soc. Sec.*, 2022 WL 2712216, at *9 (S.D. Ohio July 13, 2022) (citing *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010)); *see also Kinney v. Comm'r of Soc. Sec.*, No. 23-3889, 2024 WL 2273365, at *4 (6th Cir. May 20, 2024) ("[I]n order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.").

In this case, the ALJ included in his hypothetical that:

> This individual can understand, remember and carry out simple instructions and perform routine tasks. They can use judgement to make simple/work-related decisions. They can perform goal-oriented work such as an office cleaner position, but would be unable to perform at a production rate pace such as assembly line work or other jobs with strict production demands.

19

> They can have occasional superficial contact with co-workers and supervisors, but no teamwork, tandem tasks, conflict resolution or over-the-shoulder supervision. Superficial contact is defined as retaining the ability to receive simple instructions, ask simple questions and receive performance appraisals, but is lacking in the ability to engage in more complex social interaction such as with meeting other, supervising other people or rendering advice.

> They should have no contact with the public as part of job duties and they can deal with occasional changes in an otherwise routine and predictable work setting explained in advance to allow time for adjustments to new medications.

(Tr. 776-77). The VE testified that the hypothetical person with the stated limitations could perform the DOT occupations of kitchen helper, cleaner II, and laborer. (Tr. 777). The ALJ then relied on the VE's testimony to find plaintiff was capable of performing his past relevant work as a cleaner/housekeeper and, alternatively, other jobs existing in significant numbers at step five of the sequential evaluation process. (Tr. 744). As the hypothetical question accurately portrayed plaintiff's limitations—including the "no over-the-shoulder supervision" limitation—the conclusion that plaintiff can perform other work is supported by substantial evidence.

Plaintiff contends—citing testimony at a 2022 hearing before the prior ALJ—that the ALJ here "appears to ignore [prior VE] Mr. Pinti's testimony." (Doc. 8 at PAGEID 1123-24). When the Commissioner noted that plaintiff overlooked the VE's testimony from the 2024 hearing at issue here (Doc. 9 at PAGEID 1141), plaintiff converted the alleged error to be one of conflicting vocational evidence. (Doc. 10 at PAGEID 1157). While ALJs must resolve conflicts in the evidence,[10] no such evidentiary conflict exists here. At the 2022 hearing, in response to plaintiff's counsel's question about a hypothetical plaintiff who would have "an inappropriate response with the supervisor" during "that kind of close over the shoulder supervision even just

---

[10] *See, e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437 n.11 (6th Cir. 2014) and *Lamb v. Comm'r of Soc. Sec.*, No. 1:19-cv-1091, 2020 WL 7639617, at *7 (S.D. Ohio Dec. 23, 2020), *report and recommendation adopted*, 2021 WL 602665 (S.D. Ohio Feb. 16, 2021).

20

during the training period," the VE testified, "Yeah. That would not be tolerated."  (Tr. 65-66).

Plaintiff has not identified any evidence indicating that he could not tolerate the supervision

required to learn a job nor that he would have an inappropriate response to the supervisor trying

to teach him.  (*See* Doc. 10).  Accordingly, the ALJ's evaluation of the VE's testimony is

supported by substantial evidence, and plaintiff's second alleged error will be overruled.

### 3. The ALJ's findings regarding plaintiff's work activity and symptom severity are supported by substantial evidence.

Plaintiff's final contentions will be addressed together.  Plaintiff argues that the ALJ

failed to resolve conflicts in the evidence concerning the extent of plaintiff's work activity (Doc.

8 at PAGEID 1124-26) and relied on plaintiff's lack of mental health treatment in evaluating his

subjective statements without considering the reasons he failed to seek treatment.  (*Id.* at

PAGEID 1126-27).  The Commissioner counters that the ALJ properly considered plaintiff's

testimony and reported activities, the treatment notes, the prior administrative medical findings,

and medical opinions and concluded that plaintiff could perform medium work with additional

non-exertional limitations.  (Doc. 9 at PAGEID 1142-48).

ALJs are to "consider all of the evidence in an individual's record" and determine

whether the individual is disabled by examining "all of the individual's symptoms, including

pain, and the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence in the individual's record."  SSR 16-3p, 2016 WL

1119029, at *2.  ALJs also evaluate the "consistency" of a claimant's subjective description of

symptoms with the record.  *See Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 171 n.3 (6th

Cir. 2020) (citing *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016)).

A two-step inquiry applies to symptom evaluation.  The ALJ first determines if the record contains objective medical evidence of an underlying medically determinable impairment that could reasonably be expected to produce the individual's symptoms.  SSR 16-3p, 2016 WL 1119029, at *3; *see also* 20 C.F.R. § 404.1529(a); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  Step two of symptom evaluation shifts to the severity of a claimant's symptoms.  The ALJ must consider the intensity and persistence of the symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities. *See* 20 C.F.R. §§ 404.1529(a) and (c); SSR16-3p, 2016 WL 1119029, at *4.  In making this determination, the ALJ will consider the following:

(i)      Your daily activities;

(ii)     The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)    Precipitating and aggravating factors;

(iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)      Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)    Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

An ALJ may not consider only objective medical evidence in determining disability unless this evidence alone supports a finding of disability.  SSR 16-3p, 2016 WL 1119029, at *5

22

("If we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms."); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").  Moreover,

> [i]t is . . . not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *9.  *See also id.* at *7 (noting that the ALJ "will discuss the factors pertinent to the evidence of record").  At the same time, the ALJ is not required to cite or discuss every factor used to evaluate the consistency of a plaintiff's description of symptoms with the record evidence.  *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

Applying the two-step inquiry in this case, the ALJ first determined that objective medical evidence supports underlying medically determinable impairments—back and leg pain, schizophrenia, and HIV—that could reasonably be expected to produce plaintiff's symptoms. (Tr. 735).  However, the ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely consistent" with the evidence in the record.  (*Id.*).  Specifically, the ALJ examined plaintiff's daily activities, noting that he managed his own personal hygiene, performed light housework, prepared his owns meals, and shopped for himself.  (Tr. 735).  Although he reported visual and auditory hallucinations, he

is able to use public transportation and enjoys fishing, watching television, and viewing YouTube. (*Id.*). The ALJ considered plaintiff's reported increase in visual hallucinations, his preference for routine tasks, and his preference for avoiding crowds. (*Id.*). He also considered that taking Abilify helped relieve plaintiff's symptoms but also made him tired. (*Id.*).

The ALJ discussed plaintiff's testimony that he received no mental health treatment for the year and a half preceding the hearing. (Tr. 735). He noted that plaintiff had never been psychiatrically hospitalized, although he reported receiving long-term treatment for schizophrenia. (Tr. 737). The ALJ concluded, based on these discussions, that the "objective findings and response to conservative care suggest [plaintiff] is not as limited as alleged." (Tr. 738).

Plaintiff contends that the ALJ's repeated reference to plaintiff's work activity, including a reference to "full-time" work, is not supported by the record and inconsistent with the ALJ's discussion of "significant conflicts" in the evidence related to plaintiff's work activity. (Doc. 8 at PAGEID 1124, citing Tr. 730-31). Plaintiff is conflating the ALJ's step one findings related to the level of "Substantial Gainful Activity" with the ALJ's consideration of plaintiff's symptom severity—including his daily activities and functional limitations—in formulating plaintiff's RFC before beginning step four. *See Rabbers,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).

Citing the hearing record,[11] the ALJ noted that plaintiff "testified that he continues to work full time." (Tr. 731). However, because plaintiff "was not sure on exact periods of

---

[11] The ALJ cited generally to the "Hearing Record" but did not include pinpoint citations to that record. (Tr. 731). Where this Order includes citations to specific pages within the hearing record, the Court supplied those citations.

24

employment that he was engaged in full-time work" and because "a review of the quarterly earnings records is not entirely supportive" of the assertion that the work is full-time, the ALJ "defer[red] finding [plaintiff] ineligible for benefits at this step [step one] in the evaluation process." (Tr. 731).  Plaintiff did, in fact, testify that he worked "full-time" at Sunrise Hospitality "sweeping and mopping and taking the residents['] trash out" "for about a year" and in housekeeping at the Holiday Inn in West Virginia for "six months" during the relevant period. (Tr. 761-62, 763).  In addition, plaintiff testified that, at the time of the hearing, he worked "part-time" in housekeeping at a Holiday Inn in Ohio, but his hours varied from "two days" to "80 hours." (Tr. 760).  In response to follow-up questioning, plaintiff agreed that some weeks he worked two days and other weeks he would work "up to five days." (*Id.*).  Based on his review of plaintiff's income records during the relevant period, the ALJ found plaintiff "likely engaged in substantial gainful activity since the alleged onset date" (which would have conclusively rendered plaintiff "not disabled" at step one), "but given the lack of clarity," the ALJ essentially gave plaintiff the benefit of the doubt and deferred making a step one finding so that plaintiff's disability claim could proceed to step two. (Tr. 729, 731).

In formulating plaintiff's RFC before beginning step four, the ALJ must consider plaintiff's daily activities and other factors concerning his functional limitations.  *See* 20 C.F.R. § 404.1529(c)(3).  Thus, in formulating plaintiff's RFC, it was appropriate for the ALJ to consider plaintiff's periods of full-time and other employment during the relevant period, among other factors.

Plaintiff's final contention is that the ALJ erred in considering plaintiff's lack of mental health treatment without considering the reasons for that lack of treatment. (Doc. 8 at PAGEID 1126-27).  It is true that "'ALJs must be careful not to assume that a [claimant's] failure to

25

receive mental-health treatment evidences a tranquil mental state[,]' for the claimant's failure to seek treatment may be another symptom of a disorder itself." *Kestel v. Comm'r of Soc. Sec.*, 756 F. App'x 593, 599 (6th Cir. 2018) (citing *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009)).  However, where no evidence explains a plaintiff's lack of treatment or plaintiff provides inconsistent reasons, the ALJ properly considers the lack of treatment in determining whether the plaintiff's mental health symptoms are as limiting as alleged.  *Id.*; *Turner v. Comm'r of Soc. Sec.*, No. 3:24-cv-182, 2025 WL 2759571, at *9 (E.D. Tenn. Sept. 29, 2025) (overruling plaintiff's objection to non-disability finding where plaintiff failed to present evidence that her mental health symptoms prevented her from seeking treatment); *Benson v. Comm'r of Soc. Sec.*, No. 3:19-cv-2804, 2021 WL 804150, at *2 (N.D. Ohio Mar. 2, 2021) ("[W]here there is no evidence that explains the lack of treatment, an ALJ may properly rely on the lack of treatment as a factor in evaluating a claimant's limitations.").

In this case, the ALJ referenced plaintiff's testimony that he had no mental health treatment in the last year and a half and that the record demonstrates "minimal and conservative" mental health treatment as one factor in evaluating plaintiff's symptom severity.  (Tr. 735, 740). At plaintiff's first ALJ hearing on May 24, 2022, plaintiff indicated he had not obtained mental health treatment for "a couple years" because the place he was going "moved and, you know, I don't know where they moved to, and I think – I believe they probably changed their name too." (Tr. 52-53).  He also referenced COVID and trying to stay to himself.  (Tr. 53-54).  However, during that same period he obtained treatment for his HIV "every three months."  (Tr. 54).  At the more recent August 19, 2024 ALJ hearing, plaintiff indicated that he had not obtained mental health treatment for "a year-and-a-half" because he had relocated.  (Tr. 772).  However, his symptoms did not prevent him from obtaining other medical treatment during that time.  (Tr.

26

957, 970).  In addition, plaintiff seems to abandon this argument in his reply memorandum.

(Doc. 10).  Because plaintiff has failed to offer evidence that his symptoms prevented him from

obtaining mental health treatment, the ALJ did not err in considering his lack of mental health

treatment in evaluating plaintiff's symptom severity.  Therefore, the ALJ's symptom severity

assessment is support by substantial evidence, and plaintiff's third and fourth alleged errors will

be overruled.

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff's Statement of Specific Errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**;

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.

Date: 3/25/2026

Karen L. Litkovitz
United States Magistrate Judge

27